UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**KENNETH BAILEY,**

    **Plaintiff,**

v.                                     Case No. 3:15cv390/MCR/HTC

**SHAWN T. SWINDELL,**

    **Defendant.**

_____/

**ORDER**[1]

Defendant Shawn T. Swindell's Renewed Motion for Judgment as a Matter of Law, or Alternatively, Motion for Remittitur, is now before the Court.  *See* ECF No. 283.  Having considered the law, the record, and the parties' arguments, the Court rules as follows.

This is an action for deprivation of civil rights.  As relevant to the instant motion, Plaintiff Kenneth Bailey alleged that Defendant Shawn T. Swindell, a deputy employed by the Santa Rosa County Sheriff's Office, detained him without reasonable suspicion, arrested him without probable cause, and entered his home to initiate the arrest without a warrant or exigent circumstances justifying the

---

[1] The Court assumes the parties' familiarity with the claims, defenses, and evidentiary record in this case.  Thus, this Order recites only those facts necessary to the resolution of Defendant Shawn T. Swindell's motion for judgment as a matter of law.

warrantless entry.  Based on those allegations, Bailey asserted claims for false arrest/unlawful entry under federal and state law against Deputy Swindell.[2]  This Court granted summary judgment to Deputy Swindell on the false arrest/unlawful entry claims on the basis of qualified immunity, and the Eleventh Circuit reversed and vacated that judgment.  *See Bailey v. Swindell*, 940 F.3d 1295, 1303-04 (11th Cir. 2019).  More specifically, the Eleventh Circuit held that Deputy Swindell was not entitled to qualified immunity at the summary judgment stage because the record at that time—viewed in the light most favorable to Bailey—showed that the deputy initiated Bailey's arrest while he was "completely inside his parents' home," *see id*. at 1301, without a warrant or exigent circumstances justifying a warrantless entry, which "violated clearly established Fourth Amendment . . . protection[s] against unreasonable seizures," *see id*. at 1303-04.  With qualified immunity removed from the case (for summary judgment purposes, at least), Bailey's false arrest/unlawful entry claims were reinstated for a trial on the merits.

A four-day jury trial was held on June 1-4, 2021.  At the close of Bailey's case-in-chief, Deputy Swindell moved for judgment as a matter of law on the basis

---

[2] Bailey's complaint also asserted claims for excessive force, battery, and stalking against Deputy Swindell, as well as claims against the Santa Rosa County Sheriff (false arrest, battery, and a public records violation under state law) and another Sheriff's deputy (stalking and assault).  His excessive force and battery claims previously went to trial and the jury returned a verdict in favor of Deputy Swindell; Bailey never challenged that verdict on appeal.  The remaining state law claims were remanded to state court.

of qualified immunity, among other issues. *See* ECF No. 282-3 at 73. The Court took the motion under advisement. Consistent with Federal Rule of Civil Procedure 49(a), special verdict interrogatories were given to the jury on each issue of fact to be resolved in connection with its verdict. *See* Verdict Form, ECF No. 273. The jury returned a verdict in favor of Bailey, specifically finding as follows: (1) Deputy Swindell had reasonable suspicion to detain Bailey for a law enforcement investigation; (2) Deputy Swindell had probable cause to arrest Bailey for knowingly resisting, obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty; (3) the arrest was initiated outside of Bailey's parents' home; (4) no exigent circumstances justified Deputy Swindell's warrantless entry into the home to complete the arrest; (5) Deputy Swindell's conduct caused Bailey's injuries; and (6) Bailey should be awarded $625,000 in compensatory damages. *See id*. Deputy Swindell has now filed a renewed motion for judgment as a matter of law on grounds that the jury's verdict compels a finding that he is entitled to qualified immunity.

The doctrine of qualified immunity shields government officials performing discretionary functions from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).  Recognition of qualified immunity "reflects an attempt to balance competing values:  not only the importance of a damages remedy to protect the rights of citizens, but also the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018).  To that end, the doctrine gives officials room to make reasonable but mistaken judgments about open legal questions.  *See Malley v. Briggs*, 475 U.S. 335, 343 (1986).  When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law."  *Id*. at 341.

The availability of the qualified immunity defense is a legal question to be decided by the court and cannot be submitted to a jury.  *Simmons*, 879 F.3d at 1163; *Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996).  Where, as here, qualified immunity was denied at summary judgment based on a determination that its availability turned on a genuine issue of material fact, the defense "remains intact," the case proceeds to trial, and a jury decides the historical facts bearing on qualified immunity.  *See Simmons*, 879 F.3d at 1164.  However, the jury does not apply the law of qualified immunity to the historical facts it finds.  *See id*. at 1166.  Rather, on a defendant's timely motion for judgment as a matter of law under Rule 50, the court uses the jury's factual findings to render its legal determination on the issue of qualified immunity.  *See id*. at 1164-65.  "In other words, the question of what

circumstances existed at the time of the encounter is a question of fact for the jury—but the question of whether the officer's perceptions and attendant actions were objectively reasonable under those circumstances[, in light of clearly established law,] is a question of law for the court." *See id*. at 1164.

For qualified immunity to apply, a government official first must establish he was acting within his discretionary authority when the allegedly unlawful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once this showing is made, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. *Id*. To overcome qualified immunity, the plaintiff must establish that: (1) the official's conduct violated a statutory or constitutional right; and (2) the right at issue was clearly established at the time of the violation such that every reasonable official would have understood his conduct was unlawful in the circumstances he confronted. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

A right is clearly established where existing precedent "placed the statutory or constitutional question beyond debate and thus g[ave] the official fair warning that his conduct violated the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). Fair warning is most commonly provided by "materially similar precedent" from the Supreme Court or, for cases in this district, the Eleventh Circuit or the Supreme Court of Florida. *See Gates*, 884 F.3d at 1296; *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

"However, a judicial precedent with identical facts is not essential for the law to be clearly established." *Gates*, 884 F.3d at 1296. "Authoritative judicial decisions may establish broad principles of law that are clearly applicable to the conduct at issue." *Id*. "And occasionally, albeit not very often, it may be obvious from explicit statutory or constitutional statements that the conduct is unconstitutional." *Id*. at 1297. "In all of these circumstances, qualified immunity will be denied only if the preexisting law by case law or otherwise makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Id*.

In this case, there is no dispute that Deputy Swindell was acting within his discretionary authority when he arrested Bailey. Therefore, the burden lies with Bailey to show that Deputy Swindell's actions violated a constitutional right and that the right was clearly established at the time. Based on the jury's answers to the special interrogatories, which are binding, *see Simmons*, 879 F.3d at 1164, the first criterion is met. The jury found Deputy Swindell violated Bailey's constitutional right to be free from an unreasonable seizure by arresting him—for a misdemeanor offense under Florida law—with probable cause, but without a warrant or exigent circumstances, inside his parents' home.[3]  *See* Verdict Form, ECF No. 274. Significantly, however, the jury determined that the arrest was *initiated outside* of

---

[3] Again, the jury found that Deputy Swindell had probable cause to arrest Baily for knowingly resisting, obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty. *See* Verdict Form, ECF No. 274 at 2; *see also* Fla. Stat. § 843.02.

the home and that the constitutional violation occurred only when Deputy Swindell, without a warrant or exigent circumstances, pursued Bailey into the home after he retreated there in an attempt to depart the encounter. *See id*. at 3. Accordingly, the Court must decide whether the state of the pertinent law on September 11, 2014 would have given Deputy Swindell "fair and clear notice" that his conduct was unconstitutional. *See Bates v. Harvey*, 518 F.3d 1233, 1248 (11th Cir. 2008).

When assessing the state of the law on the date of a law enforcement encounter, specificity—with respect to both the facts and the law—is a court's guiding principle. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."); *Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id*. This inquiry "must be undertaken in light of the specific context of the case, not as a general proposition." *Id*.

Applying these principles here, the dispositive question for qualified immunity purposes is whether it was clearly established on September 11, 2014 that the specific situation confronting Deputy Swindell—that is, after the deputy initiated a warrantless but lawful misdemeanor arrest *outside a home*, the arrestee (here, Bailey) retreated into the home in an attempt to depart the encounter—did not

constitute exigent circumstances allowing him to follow Bailey into the home to complete the warrantless arrest. In other words, was it clearly established that exigent circumstances did not exist? Based on applicable precedent, the answer is no.

"When it comes to warrantless arrests, the Supreme Court has drawn a firm line at the entrance to the house." *Bailey*, 940 F.3d at 1300 (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)). Law enforcement officers may constitutionally arrest a person in a public place—outside a home, for example—without a warrant if they have probable cause to believe the person has committed a crime. *See id*. at 1300-01. However, warrantless arrests inside a suspect's home, even if supported by probable cause, are presumptively unreasonable under the Fourth Amendment, subject only to a few "jealously and carefully drawn" exceptions. *See McClish*, 483 F.3d at 1240 (quoting *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)). One exception applies where "the exigencies of [a] situation make the needs of law enforcement so compelling that a warrantless [entry] is objectively reasonable." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016); *see also McClish*, 483 F.3d at 1240 ("[E]xigent circumstances [are] situations in which the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action."). Courts have recognized "hot pursuit" of a fleeing suspect as one such exigent circumstance, among others, that may justify an officer's warrantless entry

into a home.[4]  *See Smith*, 834 F.3d at 1292-93.  To date, however, there has been little clarity on the contours of the hot pursuit doctrine in the context of fleeing misdemeanants.

Briefly, the Supreme Court has identified two factors to consider in determining whether hot pursuit creates an exigency justifying warrantless entry into a home: (1) the gravity of the underlying offense and (2) whether there was "immediate or continuous pursuit of the [suspect] from the scene of the crime." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).  Only the first factor is ultimately at issue in this case, given the jury's factual finding that Deputy Swindell initiated a lawful misdemeanor arrest while Bailey was standing completely outside his parents' home.  *See* Verdict Form, ECF No. 274 at 2-3.  When Bailey responded by retreating into his parents' home in an attempt to depart the encounter, Deputy Swindell "immediate[ly]" and "continuous[ly]" pursued him from the scene of the misdemeanor offense—a public place—into the home to complete the arrest.  *See Welsh*, 466 U.S. at 753.  There was no "extended hue and cry in and about the public streets," but there was "some sort of a chase" from outside the home into it.  *See United States v. Santana*, 427 U.S. 38, 42-43 (1976).  "The fact that the pursuit . . .

---

[4] Other well-established exigent circumstances justifying an officer's warrantless entry into a home include the need to provide emergency assistance, "danger of flight or escape, loss or destruction of evidence, [and] risk of harm to the public or the police."  *See Smith*, 834 F.3d at 1292-93.

ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [Bailey's parents'] house," for purposes of the second factor. *See id*. at 43.

The first factor—again, the gravity of the underlying offense—also supports a finding of exigency in this case, at least when viewed through the lens of objective reasonableness that governs the qualified immunity analysis. Here, the underlying offense was resisting an officer without violence, a first-degree misdemeanor punishable by up to one year of imprisonment in Florida. *See* Fla. Stat. §§ 854.02; 775.082. In the Court's view, it cannot be said that reasonable officers would have understood that this offense was not sufficiently serious to justify a continuous hot pursuit entry into a home without a warrant, at the time of Bailey's arrest on September 11, 2014.

For many years, federal and state courts across the country have been "sharply divided" on the question of whether an officer with probable cause to arrest a suspect for a misdemeanor may constitutionally enter a home without a warrant in hot pursuit of that suspect. *See Stanton v. Sims*, 571 U.S. 3, 6 (2013); *see also Lange v. California*, 141 S. Ct. 2011, 2017 (2021). Some courts adopted a categorical rule that pursuit of a fleeing misdemeanant always qualifies as an exigent circumstance, while others required a case-specific showing of exigency. *See Lange*, 141 S. Ct. at 2017 n.1 (collecting cases). Neither the Supreme Court nor the Eleventh Circuit had

resolved the divide as of September 11, 2014. At most, the Supreme Court had stated that the hot pursuit exception should "rarely" be applied to "extremely minor" offenses, such as "noncriminal, traffic offenses." *See Welsh*, 466 U.S. at 753; *Illinois v. McArthur*, 531 U.S. 326, 336 (2001) (observing that *Welsh* distinguished between jailable and nonjailable offenses, not felony and misdemeanor offenses). And as recently as 2018, albeit in an unpublished opinion, the Eleventh Circuit affirmed an officer's hot pursuit of a fleeing misdemeanant into a third-party's residence. *See United States v. Concepcion*, 748 F. App'x 904, 906 (11th Cir. 2018) (citing *Stanton*, 571 U.S. at 9).

It was not until earlier this year, on June 23, 2021, after the trial in this case, that the Supreme Court explicitly weighed in on the issue. In *Lange v. California*, the Court held that pursuit of a fleeing misdemeanant does not always—that is, categorically—supply the exigency required for a warrantless home entry. *See* 141 S. Ct. at 2021. Rather, the Court explained that there must be a "case by case [assessment of] the exigencies arising from a misdemeanant['s] flight" to determine whether the totality of the circumstances present a "law enforcement emergency" authorizing a warrantless entry. *Id*. at 2021-22. Notably for our purposes, the Court again observed, as it did in *Stanton* just eight years before, that courts at that time remained divided on whether the Fourth Amendment permits an officer to enter a home without a warrant in hot pursuit of a fleeing misdemeanant. *Id*. at 2017. In

other words, the law of exigent circumstances based on hot pursuit of a misdemeanant was not clearly established as of June 2021.  Moreover, given the "case by case" standard articulated by the Supreme Court in *Lange*, the precise contours of the hot pursuit doctrine in the context of misdemeanors remain unsettled. In light of this legal landscape, the constitutionality of Deputy Swindell's actions cannot be considered "beyond debate" as of September 11, 2014.[5]  *See Stanton*, 571 U.S. at 5 ("[B]efore concluding that the law is clearly established, . . . existing precedent must have placed the statutory or constitutional question beyond debate."); *Wilson*, 526 U.S. at 618 ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

Unsurprisingly, Bailey disagrees.  He cites a series of cases that he argues put law enforcement officers, like Deputy Swindell, on fair and clear notice that "both probable cause and exigent circumstances are required to make an in-home warrantless arrest."  Pl. Brief, ECF No. 284 at 21.  Although this is an accurate statement of constitutional law as far as it goes, it defines the test for "clearly established law" at far too high a level of generality for this qualified immunity

---

[5] Again, Deputy Swindell initiated a warrantless but lawful misdemeanor arrest in a public place (i.e., outside a home); the arrestee retreated into the home in an attempt to depart the encounter; and Deputy Swindell immediately and continuously followed the arrestee into the home to complete the arrest.

analysis. *See Mullenix*, 577 U.S. at 12 ("[The 'clearly established'] inquiry must be undertaken in light of the specific [factual] context of the case, not as a broad general proposition.") (internal marks omitted). As already explained, and as framed at the level of specificity that the Supreme Court mandates in this context, the dispositive question is whether the particular situation confronting Deputy Swindell at the time of the warrantless home entry here did not constitute exigent circumstances under clearly established law. None of the cases relied on by Bailey "fairly or clearly" resolve this question, as all of them are materially distinguishable from this case.

*Payton v. New York*, for example, is not an exigent circumstances case at all. In *Payton*, the Supreme Court first established the constitutional principle that warrantless arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. However, the Court "explicitly refused" to consider whether the warrantless home entry in *Payton* might have been justified by exigent circumstances or to otherwise define "the sort of emergency or dangerous situation[s]" that might qualify as exigent for purposes of the warrant exception, because those issues were not before them.[6] *See Welsh*, 466 U.S. at 742 (citing *Payton*, 445 U.S. at 583).

---

[6] More specifically, the Supreme Court noted that while it was "arguable" that the warrantless arrest in *Payton* might have been justified by exigent circumstances, none of the lower courts had relied on any such justification and so the Court had "no occasion to consider the sort of emergency or dangerous situation . . . that would justify a warrantless entry into a home for the purpose of either arrest or search." *Payton*, 445 U.S. at 583.

*Hardigree v. Lofton*, 992 F.3d 1216 (11th Cir. 2021), had yet to be decided when Deputy Swindell's alleged misconduct occurred in 2014, so it could not have clearly established the law at that time or provided Deputy Swindell "fair warning" that his warrantless home entry was unlawful.  *See Terrell v. Smith*, 668 F.3d 1244, 1256 n.5 (11th Cir. 2012) (decisions issued after the events in dispute occurred cannot clearly establish the law for purposes of overcoming qualified immunity); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1400 n.9 (11th Cir. 1994) (same).  Even if *Hardigree* had predated the instant case, it would not preclude qualified immunity here.  For starters, *Hardigree* involved an appeal of competing motions for summary judgment on an unlawful entry claim, and the Eleventh Circuit concluded that neither side—that is, neither the arresting officer defendant nor the plaintiff alleging unlawful entry and arrest—was entitled to prevail because of disputed material facts that a reasonable jury could decide either way.  In other words, the court held that a jury *could* reasonably find that probable cause and exigent circumstances justified the officer's warrantless home entry.

More significantly, the *Hardigree* plaintiff's version of events included critical facts not present in Bailey's case (and not acknowledged in Bailey's briefing).  Briefly, as relevant here, the plaintiff in *Hardigree* was standing inside a residence near its open front door when narcotics officers, who were standing outside the door, asked to search the residence.  The plaintiff declined, saying it was

his sister's house.  According to the plaintiff, "an officer told him to call his sister for permission to search the home," so he "announced he was going to do so," and then turned and walked away from the door to retrieve his phone.  *Hardigree*, 992 F.3d at 1228.  The Eleventh Circuit held that those facts, accepted as true for summary judgment purposes, "do not even arguably arouse" officer safety or destruction of evidence concerns, primarily because the plaintiff only walked further into the home "to comply with the orders of an officer," an act that could not reasonably be viewed as "suspicious" or "fl[ight]" under the circumstances.  *Id*. at 1229.  Nothing remotely analogous to this occurred in Bailey's case.

*McClish v. Nugent*, another case cited by Bailey, also is factually distinguishable.  There, an officer knocked on the door to a home and the suspect opened the door but remained "standing completely inside" the living room of his home.  483 F.3d at 1236.  The officer "reach[ed] through [the suspect's] open doorway," *id*. at 1241, "physically hauled [him] out of his home" onto the porch, *id*. at 1248, and arrested him.  The Eleventh Circuit unambiguously held that a warrantless home entry and arrest under those circumstances violates the Fourth Amendment because it was initiated while the suspect was "entirely within" his home, *id*., and there were no exigent circumstances—"no retreat; no hot pursuit; no concerns with spoilation of evidence[;] . . . and no hint of any threat to officer

safety," *id*. at 1245-46.[7]  But that is not what happened here, based on the jury's binding factual determination that Bailey was outside the home—not inside the home, as in *McClish*—when his arrest was set in motion, and the undisputed evidence that Bailey did retreat into his home.  Consequently, *McClish* cannot be read as "clearly establishing" the unconstitutionality of Deputy Swindell's conduct.

Neither can *Hamilton v. Williams*, 8:18-cv-885, 2019 WL 5653450 (M.D. Fla. Oct. 1, 2019), an unpublished and nonbinding district court decision entered five years *after* Bailey's arrest, in which there was no "immediate or continuous pursuit" of the suspect from the crime scene because officers first approached the suspect's home to arrest him 31 hours after the alleged underlying offense occurred, and they had spent the interim researching his criminal history and organizing the use of a K-9 unit rather than obtaining a warrant for his misdemeanor arrest.  *Id*. at *6.  Yet again, not what happened here.

In short, Bailey has not cited—and this Court has not found—a single authority in existence on September 11, 2014 that clearly established the unlawfulness of a warrantless home entry and arrest on the facts found by the jury here.  Moreover, this Court's legal determination that those facts provided an objectively reasonable basis for believing that exigent circumstances were present is

---

[7] The Eleventh Circuit also held that unconstitutionality of the officer's conduct was not clearly established at the time of the arrest in *McClish*. See *McClish*, 483 F.3d at 1248-49.  After *McClish*, however, it was.

wholly consistent with the Eleventh Circuit's earlier decision in this case. At that stage, the Eleventh Circuit was required to accept Bailey's version of the facts as true, *see Underwood v. City of Bessemer*, 11 F.4th 1317, 1331 (11th Cir. 2021) ("[A]t [summary judgment,] the court must accept the nonmoving party's version of the facts as true and make all reasonable inferences in favor of that party."), so it assumed that Bailey was "completely inside his parents' home before [Deputy] Swindell arrested him, and that Swindell neither physically nor verbally, and neither explicitly nor implicitly, initiated the arrest until Bailey had retreated fully into the house." *See Bailey*, 940 F.3d at 1301. On those facts, the court concluded that "Bailey's arrest . . . [could not] qualify as a true hot pursuit" because it "wasn't initiated in public"—"a crucial element" of the hot pursuit exception—and instead was first "set in motion *inside* a home." *Id.* at 1302. However, as is often the case, the facts as found by the jury at trial differed from those taken in the light most favorable to Bailey at the summary judgment stage.[8] At the post-trial stage, the jury's factual finding that Bailey's arrest was initiated *outside* the home controls.[9]

---

[8] *See Lee*, 284 F.3d at 1190 ("As this Court has repeatedly stressed, the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.") (internal quotation omitted).

[9] *See Kelly v. Curtis*, 21 F.3d 1544, 1546 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motions are the 'facts for present purposes,' but they 'may not be the actual facts.' For that reason, a defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for judgment as a matter of law."); *Swint v. City of Wadley, Ala.*, 5 F.3d 1435, 1439 (11th Cir. 1993) ("Any qualified immunity defenses that do not result in summary judgment before trial may be renewed at trial, where the actual facts will be established.").

And as already shown, that factual finding compels an entirely different result under Fourth Amendment jurisprudence.

Based on the foregoing, the Court finds there was no clearly established law on September 11, 2014 that would have given notice to Deputy Swindell that the situation he confronted that day—again, after initiating a warrantless but lawful misdemeanor arrest outside a home, the arrestee retreated into the home in an attempt to resist the lawful encounter—did not constitute exigent circumstances justifying a warrantless entry into the home to arrest Bailey.  Stated differently, there were no "explicit statutory or constitutional statements" or "[a]uthoritative judicial decisions" establishing that a misdemeanor offense such as resisting an officer without violence was not sufficiently serious to satisfy the hot pursuit exception to the warrant requirement.  *See Gates*, 884 F.3d at 1296-97.  The contours of the hot pursuit doctrine in the context of fleeing misdemeanants was an open legal question at that time, and arguably remains so today.  Under those circumstances, it cannot reasonably be said that Deputy Swindell was "plainly incompetent" or that he "knowingly violat[ed] the law." *See Malley*, 475 U.S. at 341.  Consequently, Deputy Swindell is entitled to qualified immunity with respect to Bailey's false arrest/unlawful entry claims.  Although a harsh result in light of the jury's verdict, the undersigned nonetheless believes it is the correct result under binding constitutional jurisprudence.

Accordingly, Deputy Swindell's renewed motion for judgment as a matter of law on that basis, ECF No. 283, is **GRANTED**.[10]  The Clerk is directed to vacate the judgment entered on June 7, 2021, ECF No. 276, and enter judgment as a matter of law in favor of Deputy Swindell, consistent with this Order.[11]

**DONE AND ORDERED**, on this 4th day of December, 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE**

---

[10] Because the Court has found that Deputy Swindell is entitled to qualified immunity, his alternative motion for remittitur is not addressed.

[11] The Clerk is also directed to terminate the pending motion for leave to file a reply, ECF No. 285, as moot.